UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. _____

**JAMES L. BROADIE**,

    Plaintiff,

v.

**RURAL HEALTH NETWORK OF
MONROE COUNTY, FLORIDA, INC.**,

    Defendant.

## COMPLAINT WITH REQUEST FOR JURY TRIAL

Plaintiff, James L. Broadie, hereby files this action against Defendant, Rural Health Network of Monroe County, Florida, Inc.:

## INTRODUCTION

1. James L. Broadie brings this action against Rural Health Network of Monroe County, Florida, Inc. for violations of the anti-retaliation provisions of the federal Civil False Claims Act, 31 U.S.C. § 3730(h), with a supplemental Florida law claim for violations of the Florida Private Whistleblower Act, Fla. Stat. 448.101.

2. Plaintiff alleges that Defendant, through one or more agents and employees, unlawfully fired him after he complained that Defendant was committing health care fraud.

## JURISDICTION AND VENUE

3. At all relevant times herein, Defendant has transacted business in the Southern District of Florida, specifically in Monroe County, Florida.

4. Most or all of the acts set forth herein occurred at Defendant's office in this District, specifically in Monroe County, Florida.

5. Therefore, this is a proper venue under 28 U.S.C. § 1391(b).

6. This Court has federal question/"arising under" jurisdiction under the federal False Claims Act, and supplemental jurisdiction under 28 U.S.C. § 1367.

## PARTIES

7. Plaintiff, James L. Broadie, is a person of the full age of majority, domiciled and residing in Douglasville, Georgia.

8. Defendant, Rural Health Network of Monroe County, Florida, Inc., is a Florida not-for-profit corporation doing business in Florida.

## FACTS

### A. THE MEDICARE AND MEDICAID PROGRAMS

9. In 1965, Congress enacted the **Medicare Program**, Title 18 of the Social Security Act, under 42 U.S.C. § 1395 et seq., authorizing the U.S. Government to pay for the costs of certain medical services.

10. The U.S. Government, through the Department of Health and Human Services ("HHS"), administers the program.

11. HHS has delegated the administration of the Medicare Program to its component agency, the Center for Medicare and Medicaid Services ("CMS").

12. Part B of the program is a federally funded health insurance system for disabled persons, blind persons, and persons aged 65 and older.

13. The Medicare Program reimburses health care provides for appropriate medical services.

14. Part B generally covers 80% of reasonable charges and items other than hospital expenses, and 100% of clinical diagnostic laboratory services.

15. The **Medicaid Program**, created by Title 19 of the Social Security Act of 1995, codified at 42 U.S.C. § 1195 *et seq.*, was designed to provide similar benefits to qualifying low-income individuals. The U.S. Government funds part of the Medicaid Program in each state. Each state basically funds the remainder.

16. At all relevant times herein, Defendant was a qualified health care provider and government contractor through the Medicare and/or Medicaid Programs.

17. Like all government contractors providing health care services under Medicare and/or Medicaid, Defendants certified to the United States Government, through CMS, that before treating Medicare and/or Medicaid patients and accepting Medicare and/or Medicaid reimbursement, it would operate in accordance with the requirements established by the Secretary of HHS.

18. Under applicable Medicare and Medicaid rules and regulations, health care providers cannot submit claims to either program that were not actually rendered and medically necessary.

   **B. MR. BROADIE'S COMPLAINTS THAT DEFENDANT WAS COMMITTING HEALTH CARE FRAUD**

19. At all relevant times herein, Defendant RHN operated a healthcare business in Key West, Monroe County, Florida, providing a variety of healthcare services to the public, and seeking Medicare and/or Medicaid reimbursement.

20. Defendant's business is located at 3706 N. Roosevelt Blvd., Suite C, Key West, Florida 33040.

21. The healthcare business, or health center, is a non-profit 501(c)(3), federally funded by the Human Resources and Services Administration (HRSA).

22. Defendant employed Plaintiff as Chief Financial Officer (CFO) during two time periods: first, from approximately January 2018 through February 2019, and second, from approximately August 2022 through September 10, 2024.

23. During the first time period, Plaintiff established financial policies and plans to rectify Defendant's misappropriation of federal funds. Defendant was under federal restrictions implemented by the Office of the Inspector General, U.S. Department of Health and Human Services. Defendant was also being investigated for failing to pay over $250,000

3

in payroll taxes.

24. During the interim period, Plaintiff relocated to Indiana.

25. Throughout his employment, Plaintiff reported directly to Defendant's Chief Executive Officer (CEO). During the second time period, the CEO was Amy Halstead.

26. During the second time period, Plaintiff was a "department of one" until he was assigned an assistant: Jennifer Caraballo, Billing Specialist and Administrative Assistant.

27. During the second time period, Plaintiff's employment was "hybrid": every two weeks he traveled to Florida and worked at RHN's location in Key West.

28. There were two monthly meetings in which financial reports were reviewed: one with the Finance Committee and the other with the Board of Directors. Plaintiff normally participated in both of these regularly scheduled meetings, as well as weekly staff meetings.

29. On or about August 22, 2024, Ms. Caraballo, reported to Plaintiff that she had discovered health care fraud occurring at RHN.

30. On Sept. 2 he went down and he… told Ms. Caraballo that "we will need to monitor this next week" and he then directed her ton Sept. 4 o go the Medical Department—where Sharon Ward, M.D., Supervising OB/GYN (the midwife's supervisor) and the midwife herself worked—and learn additional information. She did so, confirmed the that the '
unlawful billing had occurred, and relayed the information to Plaintiff.

31. Plaintiff also discovered that all or virtually all of the relevant patients were Medicare and Medicaid beneficiaries.

32. In particular, Plaintiff confirmed these illegalities:
With approval from Ms. Halstead, Dr. Ward, obstetrician/gynecologist (Ms. Smith's supervisor) gave RHN's nurse-midwife, Amy Smith, her user password and user I.D. number to work under. The licensed midwife, Amy Smith was taken out of the

4

system because she was retiring and the new midwife, Judith McTaggart, did not have a license to practice in the State of Florida. The CEO was allowing Ms. McTaggart to provide services to patients even though Ms. McTaggart was unlicensed. Ms. Halstead and Dr. Ward agreed to give the midwife, Nurse Smith's password and user ID number to Judith McTaggart. The midwife, Amy Smith, advised Ms. Halstead that doing so was fraudulent, but Ms. Halstead told her to not worry about it.

33. This action was fraudulent because the midwife was using someone else's password and user I.D. to put claims into the system and physician's claims were billed to Medicare and Medicaid at higher rate than a midwife's claims.

34. Plaintiff also found that Dr. Ward was off on the days that the system recorded her seeing patients.

35. On Thursday, September 5, 2024, Plaintiff called Dr. Taweh Beysolow, Chief Medical Officer (CMO), and advised him about the fraud. Plaintiff explained what he had verified and that it constituted health care fraud.

36. Upon information and belief, Dr. Beysolow subsequently contacted Ms. Halstead about Plaintiff's call to him, relaying all pertinent information: Ms. Halstead contacted Plaintiff on the following Monday, September 9, 2024, and stated that that she wanted to have their usual follow-up meeting on Tuesday, September 10, 2024.

37. However, on Tuesday, September 10, 2024, Ms. Halstead—along with Thomas Ginnetti, from Integrated Employer Resources, discharged Plaintiff during a video call (a "Teams meeting")—only three (3) business days after he complained about the fraud.

38. Ms. Halstead knew that Plaintiff was planning to report the fraudulent billing at the staff meeting scheduled for September 10, 2024, at the finance meeting scheduled for September 13th, 2024 and at the board meeting scheduled for September 18, 2024.

# COUNTS

## COUNT 1 OF 2:
### RETALIATORY DISCHARGE UNDER THE
### FEDEAL CIVIL FALSE CLAIMS ACT, 31 U.S.C. § 3730(h)

39. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 38 as if fully set forth herein.

40. Plaintiff complained to Defendant, through its agents and/or employees, about its lack of compliance with health care laws and regulations.

41. Plaintiff refused to participate in Defendant's lack of compliance with health care laws and regulations.

42. As a proximate cause of these complaints, Defendant discharged Plaintiff.

43. Even if Plaintiff were ever found to have been incorrect about Defendant's violations of one or more health care laws and regulations, it was unlawful to retaliate against him for expressing his good faith belief that Defendant was acting unlawfully.

44. Plaintiff, James L. Broadie, seeks all damages in the premises from Defendant, and requests that judgment be entered in his favor and against Rural Health Network of Monroe County, Florida, Inc., under 31 U.S.C. § 3730(h), including, but not limited to, "all relief necessary to make the employee whole," double back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

## COUNT 2 OF 2:
### RETALIATORY DISCHARGE UNDER THE
### FLORIDA PRIVATE WHISTLEBLOWER ACT, FLA. STAT. 448.101 *ET SEQ.*

45. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 38 as if fully set forth herein.

46. Plaintiff notified Defendant about the unlawful activities that Defendant was undertaking.

47. Defendant retaliated against Plaintiff in violation of the Florida Private Whistleblower

Act (FPWA), Fla. Stat. 448.101 *et seq.*

48. Specifically, Defendant took "retaliatory personnel action" — namely discharging Plaintiff in violation of Fla. Stat. 448.102(3), soon after he "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

49. Plaintiff seeks a judgment against Defendant for all damages in the premises, including all relief afforded by Sections 448.103 and 448.104 the FPWA: an injunction restraining continued violation of the FPWA; compensation for lost wages, benefits, and other remuneration; "any other compensatory damages allowable by law"; and reasonable attorney's fees, court costs, and expenses.

## JURY DEMAND

50. Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted:

s/ Steven F. Grover
Steven F. Grover
Fla. Bar # 131296
Steven F. Grover, P.A.
5075 Regency Isles Way
Cooper City, FL 33330
Tel.: 954-290-8826
E-mail: stevenfgrover@gmail.com